UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NICOLE TORRES,<br><br>Defendant. | **SEALED INDICTMENT**<br><br>24 Cr. |

**24CRIM 499**

### Overview

1.  NICOLE TORRES, the defendant, abused her positions of public trust as an elected district leader in the Bronx, New York, and as an employee of the New York City Board of Elections (the "NYC-BOE"), to engage in extortion, bribery, and fraud schemes. First, TORRES illegally demanded payments from Bronx residents to herself and a local organization (the "Bronx Organization") in exchange for selecting those individuals as poll workers. On certain occasions, when a prospective poll worker refused to pay, TORRES denied that person the opportunity to work at poll sites. Second, TORRES participated in a scheme to falsify documents to make it appear that certain individuals had worked as poll workers on particular dates, when, in truth and fact and as she well knew, they had not. TORRES and other members of the scheme then split the fraudulently obtained paychecks issued to the no-show poll workers.

### Background

2.  During elections in New York City, poll workers work at poll sites and, among other things, prepare poll sites, check in voters, and assist voters. In or around 2019, New York City instituted early voting, which gave voters the opportunity to vote on nine particular days preceding an election day, in addition to election day itself. As a result, New York City poll workers now have the opportunity to work a total of 10 days each election cycle. If a New York

1

City poll worker works all nine days of early voting and election day, that poll worker may earn a total of approximately $2,750 each election cycle.

3.  In the Bronx, New York, there are two ways that a resident can become a poll worker. First, a resident can apply directly through the NYC-BOE. Second, a district leader, who is an unpaid, local elected official, can recommend that a particular Bronx resident become a poll worker. When an election occurs, open poll worker positions are first filled by poll workers recommended by district leaders.

4.  During early voting and on election day in the Bronx, poll workers record their attendance at a particular poll site by signing booklets called the "Forms Booklets." Each poll site generally has two coordinators who, among other tasks, oversee the Forms Booklets to ensure that they accurately reflect the attendance of poll workers.

### The Defendant

5.  Since in or about 2019, NICOLE TORRES, the defendant, has been a district leader for New York's 81st Assembly District in the Bronx, New York. In addition, since at least in or about 2016, TORRES has been an employee of the NYC-BOE. While working at the NYC-BOE, TORRES has, at times, been responsible for ensuring that poll workers who have signed the Forms Booklets are paid for their work during early voting and election day.

### The Extortion, Bribery, and Fraud Schemes

6.  NICOLE TORRES, the defendant, abused her power as a district leader and a NYC-BOE employee to engage in two illegal schemes.

7.  First, from at least in or about 2019, up to and including in or about August 2024, NICOLE TORRES, the defendant, agreed to require and required Bronx residents to pay a sum of money, usually $150, either to her or to the Bronx Organization in exchange for TORRES selecting

those individuals as poll workers for upcoming elections. TORRES and her co-conspirators told poll workers about this requirement in person, on phone calls, and through text messages. Both the Bronx Organization and TORRES profited from the scheme. TORRES personally obtained at least approximately $28,000 in illegal payments. TORRES received the payments, often in the amount of $150, through mobile payment applications, money orders, and checks. In certain instances, TORRES received money orders or checks that were written out to the Bronx Organization, and TORRES altered the payee line on those money orders or checks to say "Nicole Torres" so that she could deposit that money into her personal bank account.

8.  Second, from at least in or around 2018, up to and including in or about August 2024, NICOLE TORRES, the defendant, agreed to falsify the Forms Booklet, which is a NYC-BOE record, to make it appear that certain individuals (the "No-Show Poll Workers") worked as poll workers during early voting and election day when, in truth and fact, those individuals did not work on those dates. TORRES often worked with coordinators who oversaw the Forms Booklets at specific poll sites. These coordinators signed in No-Show Poll Workers in the Forms Booklets, frequently at TORRES's direction. TORRES and her co-conspirators then received the salaries for the No-Show Poll Workers—sometimes through the mail—and split the fraudulently obtained salaries among themselves. While working at the NYC-BOE, at relevant times, TORRES was responsible for ensuring that poll workers, including the No-Show Poll Workers, were paid. In furtherance of the scheme, TORRES communicated with her co-conspirators in person, on phone calls, and through text messages. Through these communications, TORRES and her co-conspirators, among other things, shared the personal identifying information of the No-Show Poll Workers, discussed which co-conspirator should falsely sign the No-Show Poll Workers' names in the Forms Booklets, and discussed how to split

the fraudulently obtained salaries of the No-Show Poll Workers. The No-Show Poll Workers were typically paid by check, some of which were issued by mail. TORRES and her co-conspirators received and cashed many of these checks themselves, and split the money among themselves by transferring money to one another in cash and through mobile payment applications. Based on her participation in the scheme, TORRES personally obtained at least approximately $36,000 in fraud proceeds, and her co-conspirators personally obtained money as well.

9.  From in or about March 2021 through in or about April 2021, NICOLE TORRES, the defendant, and a co-conspirator ("CC-1") used, transferred, and possessed the name of a No-Show Poll Worker (the "Victim"). Specifically, in or around March 2021, after CC-1 sent TORRES via text message the name of the Victim, TORRES confirmed that she would list the Victim as having worked as a poll worker in March 2021 even though, in truth and fact, the Victim did not work that month. In or about April 2021, CC-1 received a check for the Victim's purported salary in the mail, and CC-1 gave TORRES a portion of that fraudulently obtained salary.

## STATUTORY ALLEGATIONS

### COUNT ONE
### (Conspiracy to Commit Extortion Under Color of Official Right)

The Grand Jury charges:

10. The allegations contained in paragraphs 1 through 9 of this Indictment are repeated and realleged as if set forth fully herein.

11. From at least in or about 2019, up to and including in or about August 2024, in the Southern District of New York and elsewhere, NICOLE TORRES, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit extortion under color of official right, as that term is defined in Title 18, United States Code, Section 1951(b)(2), and thereby would and did obstruct,

4

delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, TORRES agreed with others to, under color of official right, obtain money from prospective poll workers, with their consent, that was not due to TORRES or her office.

(Title 18, United States Code, Section 1951.)

## COUNT TWO
### (Extortion Under Color of Official Right)

The Grand Jury further charges:

12. The allegations contained in paragraphs 1 through 9 of this Indictment are repeated and realleged as if set forth fully herein.

13. From at least in or about 2019, up to and including in or about August 2024, in the Southern District of New York and elsewhere, NICOLE TORRES, the defendant, knowingly committed and attempted to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), and thereby obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, TORRES, under color of official right, obtained money from prospective poll workers, with their consent, that was not due to TORRES or her office.

(Title 18, United States Code, Sections 1951 and 2.)

## COUNT THREE
### (Conspiracy to Commit Honest Services Wire Fraud)

The Grand Jury further charges:

14. The allegations contained in paragraphs 1 through 9 of this Indictment are repeated and realleged as if set forth fully herein.

15. From at least in or about 2019, up to and including in or about August 2024, in the Southern District of New York and elsewhere, NICOLE TORRES, the defendant, and others

known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit honest services wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346.

16. It was a part and object of the conspiracy that NICOLE TORRES, the defendant, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud, and to deprive the public of its intangible right to honest services from TORRES as a district leader and a NYC-BOE employee, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343 and 1346, to wit, TORRES agreed with others to defraud the public of its right to TORRES's honest services by requiring prospective poll workers to pay TORRES or the Bronx Organization a sum of money in exchange for obtaining employment as a poll worker.

(Title 18, United States Code, Section 1349.)

## COUNT FOUR
### (Honest Services Wire Fraud)

The Grand Jury further charges:

17. The allegations contained in paragraphs 1 through 9 of this Indictment are repeated and realleged as if set forth fully herein.

18. From at least in or about 2019, up to and including in or about August 2024, in the Southern District of New York and elsewhere, NICOLE TORRES, the defendant, having devised and intending to devise a scheme and artifice to defraud, and to deprive the public of its intangible right to honest services from TORRES as a district leader and a NYC-BOE employee, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate

and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, and attempted to do the same, to wit, TORRES participated in a scheme to defraud the public of its right to TORRES's honest services by requiring prospective poll workers to pay TORRES or the Bronx Organization a sum of money in exchange for obtaining employment as a poll worker.

(Title 18, United States Code, Sections 1343, 1346, 1349, and 2.)

## COUNT FIVE
### (Conspiracy to Commit Mail Fraud)

The Grand Jury further charges:

19. The allegations contained in paragraphs 1 through 9 of this Indictment are repeated and realleged as if set forth fully herein.

20. From at least in or about 2018, up to and including in or about August 2024, in the Southern District of New York and elsewhere, NICOLE TORRES, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit mail fraud, in violation of Title 18, United States Code, Section 1341.

21. It was a part and an object of the conspiracy that NICOLE TORRES, the defendant, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money or property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, would and did place in a post office and authorized depository for mail matter, a matter and thing whatever to be sent and delivered by the Postal Service, and deposit and cause to be deposited a matter and thing whatever to be sent and delivered by a private and commercial interstate carrier, and take and receive therefrom, such matter and thing, and knowingly cause to

be delivered by mail and such carrier according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, such matter and thing, in violation of Title 18, United States Code, Section 1341, to wit, TORRES agreed with others to falsify NYC-BOE records to make it appear that certain individuals had worked as poll workers on particular dates when, in truth and fact, they had not, in order to fraudulently obtain the salary checks of the No-Show Poll Workers, including those that had been transmitted by the United States mail, and split the fraud proceeds with other participants in the scheme

(Title 18, United States Code, Section 1349.)

## COUNT SIX
### (Mail Fraud)

The Grand Jury further charges:

22.  The allegations contained in paragraphs 1 through 9 of this Indictment are repeated and realleged as if set forth fully herein.

23.  From at least in or about 2018, up to and including in or about August 2024, in the Southern District of New York and elsewhere, NICOLE TORRES, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money or property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, placed in a post office and authorized depository for mail matter, a matter and thing whatever to be sent and delivered by the Postal Service, and deposited and caused to be deposited a matter and thing whatever to be sent and delivered by a private and commercial interstate carrier, and took and received therefrom, such matter and thing, and knowingly caused to be delivered by mail and such carrier according to the direction thereon, and at the place at which it was directed to be delivered by the person to whom it was addressed, such matter and thing, to wit, TORRES participated in a scheme to falsify

NYC-BOE records to make it appear that certain individuals had worked as poll workers on particular dates when, in truth and fact, they had not, in order to fraudulently obtain the salary checks of the No-Show Poll Workers, including those that had been transmitted by the United States mail, and split the fraud proceeds with other participants in the scheme.

(Title 18, United States Code, Sections 1341 and 2.)

## COUNT SEVEN
### (Aggravated Identity Theft)

The Grand Jury further charges:

24. The allegations contained in paragraphs 1 through 9 of this Indictment are repeated and realleged as if set forth fully herein.

25. From at least in or about March 2021 through at least in or about April 2021, in the Southern District of New York and elsewhere, NICOLE TORRES, the defendant, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, TORRES used, possessed, and transferred the name of the Victim during and in relation to the mail fraud conspiracy and mail fraud violations charged in Counts Five and Six of this Indictment.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

## FORFEITURE ALLEGATION

26. As a result of committing the offenses alleged in Counts One through Six of this Indictment, NICOLE TORRES, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28 United States Code,

Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

**Substitute Assets Provision**

27. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)



FO[redacted]

DAMIAN WILLIAMS
United States Attorney

10